STATE *ex rel.* J. C. FANNING

*v.*

THE COUNTY COURT OF MERCER COUNTY, *etc., et al.*

(No. 9889)

Submitted October 8, 1946. Decided October 22, 1946.

*Burton, Sanders & Shaffer,* for petitioner.

*R. H. Pendleton, Ajax T. Smith* and *Albert S. Kemper, Jr.,* for respondents.

LOVINS, JUDGE:

By this original proceeding in mandamus, relator, J. C. Fanning, seeks to compel the Board of Canvassers of Mercer County, West Virginia, and C. I. Johnston, A. C. White, and Fred A. Thomason, members of said board, to grant a recount of ballots cast for and against him at the primary election held on August 6, 1946, as a Democratic candidate for the office of member of the county court of said county for a term of six years.

This proceeding was submitted on relator's petition, the joint and several answer of respondents, and a demurrer to said answer by relator. Although the answer of respondents raises several issues of fact, we treat all facts, well pleaded in the answer, as being true.

Relator's constitutional and statutory qualifications for the office to which he aspired, are not questioned. He was opposed for the nomination sought by him by respondent, C. I. Johnston, and two other persons.

Respondents Johnston, White and Thomason convened as the Board of Canvassers of Mercer County on August 9, 1946, for the purpose of canvassing the votes cast at the primary election held in said county on August 6, 1946. At the first session, the board, without opening and counting the sealed packages of ballots, examined the election returns and made a tabulation of the votes cast in Mercer County at the August 6, 1946, primary election, which showed the votes cast at each precinct of said county for the various candidates. The canvass was not completed on August 9, 1946, and the board adjourned to August 12, 1946, for the purpose of completing it. In the interval between the first and second sessions of the board, its clerk made a computation of all the votes cast in the various precincts for the various candidates at said primary election, showing the totals received by the county and district officers. When the board convened on August 12, 1946, the computation so made was presented to the board. After an examination of the tabulation and computation so made by the clerk, the board found the same to be correct, and thereupon in public session orally declared

the result of the aforesaid primary election in accordance with the computed totals thereon shown. After such oral declaration, the clerk of the board was orally ordered to prepare for entry of record the tabulation and certificates of results required by Code, 3-4-20. The clerk was also orally directed to prepare and file certificates of said results with the Secretary of State of West Virginia and the Clerk of the Circuit Court of Mercer County in accordance with Code, 3-4-21. Said certificates were dated August 12, prepared August 13, and signed by all members of the board on August 14, 1946, but it does not clearly appear whether the tabulation was signed. By the methods above indicated the board found that respondent, Johnston, had received 1757 votes; that relator had received 1740 votes; and that the other two candidates had received 1227 votes and 613 votes, respectively.

At eleven forty-five a. m. on the 14th day of August, 1946, before the aforesaid certificates were signed and before any order was signed and ordered to be entered in the primary election precinct record, relator made a written demand for a recount of the votes cast for and against him.

On August 19, 1946, respondents Johnston, White and Thomason met as a board of canvassers, and, after a hearing upon the demand for recount, refused to grant same on the ground that the results of the primary election held on August 6, 1946, had been ascertained and declared on August 12, 1946.

Relator in petitioning for this writ of mandamus to compel respondents to grant him a recount, makes the following points in support of his contentions: (1) That respondents did not open the sealed packages of ballots cast in the several precincts of Mercer County, count the said ballots without unfolding them, and enter the number of ballots so counted on their record; and (2) that relator made demand for a recount before the results of the primary election were officially declared.

It is well settled that mandamus is the appropriate remedy to require a board of canvassers to reconvene and correct errors it may have committed in attempting to perform its statutory duties. Code, 3-5-41. *State v. Sizemore,* 124 W. Va. 700, 704, 22 S. E. 2d 296; *State v. Heatherly,* 96 W. Va. 658, 123 S. E. 795.

Respondents admit in their answer that the sealed packages of ballots cast in the several precincts of Mercer County at the primary election of August 6, 1946, were not opened and the ballots counted; but they assert that they have fully complied with the provisions of Code, 3-4-20, relating to the canvassing of ballots for the primary election. They deny that the further steps of opening the packages of ballots, counting the folded ballots and entering the number thereof upon their record, as set forth in Code, 3-5-33, as amended, was required of them in canvassing the ballots for said primary election. Relator, however, contends that the board of canvassers must not only comply with the provisions of Code, 3-4-20, but must also perform the additional duties as provided by Code, 3-5-33, as amended and reenacted by Chapter 61, Acts of the Legislature, 1945. Relator bases this contention upon the wording of Code, 3-5-33, as amended, which states that the board shall follow the procedure, therein set forth, in "every election".

Section 33, *id.,* provides: " * * * The board, before proceeding to canvass the returns of the election, shall open each sealed package of ballots so laid before them, and, without unfolding them, count the number in each package and enter the same upon their record. * * *" It is thus seen that these acts are not a part of the official canvass nor of the recount, but are separate and distinct duties imposed upon canvassing boards. Whether these additional duties are imposed on such boards in canvassing primary elections can best be ascertained by the legislative history of Section 33, *id.,* relating to conducting elections in general, as compared to the legislative history of Code, 3-4-20, relating

solely to the nomination of candidates for offices and applicable solely to primary elections.

Section 33, *id.*, was first enacted as Section 31, Chapter 100, Acts of the Legislature, 1863, and since 1891, with the exception of a proviso not material to the question here involved, has remained in its present form. On the other hand, Code, 3-4-20, relative to canvassing returns of primary election, was first enacted in 1915. Subsequently, only changes not pertinent to the question here have been made in said section.

It must be presumed that the Legislature of 1915, when it first enacted the section relating to the canvassing of ballots for a primary election, had full knowledge of the prior section relating to the canvassing of ballots for elections in general. *County Court* v. *Keedy,* 124 W. Va. 408, 411, 20 S. E. 2d 468. Despite such knowledge the Legislature failed to include in the statute relating to canvass of primary election returns, provisions concerning the opening of the sealed packages of ballots, the counting of the unfolded ballots, and the entry thereof on their record as preparatory steps to conducting the canvass for a primary election. Thus, Code, 3-5-33, as amended, and Code, 3-4-20, are inconsistent and cannot be reconciled in any way except to treat the statute last enacted, concerning primary elections only, as constituting an exception to the general provisions of the earlier statute. See II Lewis' Sutherland Statutory Construction, 2d Ed., Section 346. We therefore hold that it was not necessary for the respondents herein to open the sealed packages of ballots cast at the primary election of August 6, 1946, to count the same, and to enter the number thereof upon their record.

Nor are we of the opinion that Section 20-a, Article 4, Chapter 44, Acts of the Legislature, 1941, alters this construction. Said section provides only for a method of recount of votes, and in no way does it alter the method to be followed by the board in canvassing the ballots cast at a primary election.

· The question of whether the demand for a recount was made by relator before the results were officially declared in the manner prescribed by Code, 3-4-20, is decisive in this case.

The records of a canvassing board are not conclusive of what was done by said board, nor is their record required to be made up with the same strictness as that of a court of record. *Daugherty* v. *County Court*, 127 W. Va. 35, 46, 31 S. E. 2d 321. We therefore may disregard the argument here made with reference to entry of record of the findings of the Board of Canvassers of Mercer County.

No limitation as to the time for making demand for a recount is prescribed by Code, 3-5-33, as amended, but the statute has been construed to preclude the granting of a recount if demand is made after the declaration of result. *Beacom* v. *Bd. of Canvassers*, 122 W. Va. 463, 10 S. E. 2d 793. We think, however, that clearly the Legislature contemplated that a reasonable interval of time should elapse between the ascertainment of the result of an election and the declaration of the result thereof, so that the right of no person should be cut off by the hasty action of the board.

The points of the syllabus in the *Beacom* case read as follows:

"1. After the returns of an election have been canvassed, the right of a candidate voted for at the election to demand a recount under Code, 3-5-33, must be exercised before the result of the election is officially declared.

"2. The result of an election is officially declared when all the votes for the respective candidates have been tabulated and the board of canvassers, in regular session, directs the recordation of an order in the election record book, certifying the result in accordance with the tabulations."

We adhere to the rules announced in the points of the

syllabus above quoted, but we believe that the second point of the syllabus must be read in the light of the facts stated in the opinion as to the declaration of results made in that case. The opinion in the *Beacom* case discloses that in that case the board of canvassers approved and signed the tabulations at 9:35 a. m., on May 24, 1940, and recessed until 2:00 p. m. on that day, when they met and signed and delivered to the clerk for recordation an order declaring the results according to the tabulations. The demand for recount was not made by relator in the *Beacom* case until May 27, 1940.

A widely different state of facts is disclosed by the respondents' answer in this case. They met on August 12, approved the tabulation, and orally declared the result, but the order was neither prepared nor signed at that time. The order was prepared on August 13, 1946, but was not signed by the board until August 14, and after demand had been made by relator for a recount.

The oral declaration of the result made on August 12 was entirely informal, and, notwithstanding that the record of the board of canvassers is not prepared with the same formality and strictness as that of a court of record and is not treated as a verity, some formality in performing the grave duties imposed upon them by statute is necessary. The declaration of the board made on August 12, 1946, lacked the necessary formality to become the final and official act of the board. The declaration, as contemplated by the statute, was not made until August 14, 1946, at which time the board signed the order certifying the results of the primary election held in their county. The demand for a recount having preceded the declaration of result, was timely made and it was the ministerial duty of the board of canvassers to grant the same.

For the foregoing reasons a writ of mandamus is

awarded in accordance with the order of this Court entered on October 11, 1946.

*Writit awarded.*