125 S.E.2d 883 (1962)
STATE ex rel. Charles H. BUMGARNER, Jr., et al., etc.
v.
The COUNTY COURT OF WIRT COUNTY et al., etc.
No. 12155.
Supreme Court of Appeals of West Virginia.
Submitted April 3, 1962.
Decided April 27, 1962.
Opinion Filed June 12, 1962.
*884 William L. Jacobs, Parkersburg, for relators.
Beryl A. Cunningham, Parkersburg, Lewis D. Archer, Pros. Atty., Wirt County, Elizabeth, George Shedan, Parkersburg, for respondents.
HAYMOND, Judge.
This original proceeding in prohibition was instituted in this Court on February 9, 1962. The petitioners, Charles H. Bumgarner, Jr., Harry Knotts, John Hale, Kelcie Turner and George Robinson, members of the Board of Education of Wirt County, and Waymond F. Riley, Superintendent of Schools of that county and Secretary of the Board of Education, seek a writ to prohibit the defendants, The County Court of Wirt County and J. W. Morehead, E. W. Allman and Hubert Full, Commissioners of such court and as such ex officio members of the Board of Canvassers of Wirt County, from conducting a recount of the ballots cast at a special bond election and a special school levy election which were held in Wirt County on December 12, 1961. A recount of the votes cast at both special elections having been demanded by five taxpayers and voters of Wirt County on December 22, 1961, the defendants by order entered at a meeting held on January 29, 1962, determined to conduct such recount on February 13, 1962.
Upon the filing of the petition a rule was awarded returnable before this Court on February 27, 1962, at which time this proceeding was continued to enable the respective parties to submit proof in the form of depositions. On April 3, 1962, this proceeding was submitted for decision upon the petition, the answer of the defendants and exhibits filed with the answer, the replication of the petitioners, the depositions and an exhibit therewith filed in behalf of the respective parties, and the written briefs and the oral arguments of counsel for the petitioners and the defendants.
On April 27, 1962, by order entered on that day, this Court held that the petitioners were not entitled to the writ prayed for in the petition, refused to grant the prayer of the petition and discharged the rule previously awarded in this proceeding. This opinion is now filed for the purpose of stating the reasons for the refusal of this Conrt to grant the writ.
The petitioners charged that upon the canvass of the returns of both elections, held jointly by the members of the board of education as the board of canvassers for the special bond election and the members of the county court as the board of canvassers for the special school levy election on December 18, 1961, in a room of the courthouse of Wirt County, the canvass of the votes of each election was concluded and the result of each election was declared before any demand was made by any person for a recount of the ballots cast at each election. The defendants by their answer denied the foregoing charge and alleged that no declaration of the result of each election was made during or upon the conclusion of the canvass of the votes on December 18, 1961, or at any other time and that no declaration of the result of each election has ever been made.
*885 The proof submitted in behalf of the petitioners showed that during the canvass of the votes of each election, which was conducted jointly by the members of the board of education and the members of the county court acting as boards of canvassers for each election, the results of the vote at some of the individual voting precincts were announced, sometimes by a member of the board of education and sometimes by a member of the county court, and that such votes, as announced, were tabulated by the county superintendent of schools who acted as clerk of the board of canvassers for the special bond election; that the clerk of the county court acted as clerk of the board of canvassers for the special school levy election; that the only persons present during the canvass of the votes were the members of the canvassing boards, the clerk of each board, an attorney representing certain taxpayers and voters who subsequently demanded a recount, and a reporter who appeared with the attorney and, for a short period of time, the sheriff of the county; that the county superintendent of schools who acted as clerk of the board of canvassers of the special bond election tabulated the returns of the seventeen voting precincts at which such election was conducted, determined the total number of votes cast as 1400, the number of 906 votes cast for the bonds and the number of 494 votes cast against the bonds, and entered the foregoing totals upon a tally sheet of the bond election which is filed as an exhibit with the depositions in behalf of the petitioners; that the tally sheet containing the foregoing totals was signed by each of the members of the board of education, by each of the members of the county court, by the county superintendent of schools as clerk of the board of canvassers of the special bond election and by the county clerk as clerk of the board of canvassers of the special school levy election; that about seven o'clock that evening the members and the clerk of each board of canvassers left the room in which the canvass had been conducted without making any formal adjournment or without adjourning either canvass to a future date; that the ballot boxes were deposited with a proper custodian; that the county superintendent of schools took the tally sheet which had been signed by the members of each board of canvassers to the office of the board of education and there computed the percentage of votes cast in favor of the special bond election which he determined to be sixty five per cent and entered that percentage on the tally sheet; and that during the canvass the county superintendent of schools prepared, by pencil, report or minutes of the proceedings taken, and on the day immediately following the canvass, December 19, 1961, he copied the penciled report or minutes by typewriter and entered such copy upon the minutes of the board of education and such minutes were then signed by the president and later by the other members of the board of education.
The county superintendent of schools and other witnesses who testified in behalf of the petitioners stated that the results of both elections were declared before the meetings of the members of each board of canvassers were dissolved on the evening of December 18, 1961. There is no record or documentary evidence in this proceeding, however, which supports or is consistent with the foregoing statements in behalf of the petitioners. The only record introduced in evidence is the tally sheet designated "Exhibit 1" with the depositions in behalf of the petitioners. This tally sheet discloses only the number of votes cast at each of the seventeen voting precincts, the total of which was 1400 votes, the number of votes cast at each of such precincts for the bonds the total of which was 906, the number of votes cast at each of such precincts against the bonds the total of which was 494, and the percentage of the total votes cast in favor of the bonds amounting to sixty five per cent, which was placed on the tally sheet in the office of the board of education after the members of the boards of canvassers had left the courthouse on the evening of December 18, 1961. Though the tally sheet was signed by each of the members of the *886 board of education, by each of the members of the county court, by the county superintendent of schools as clerk of the board of canvassers of the special bond election, and by the clerk of the county court as clerk of the board of canvassers of the special school levy election, it contains no declaration or certificate of the results of the elections or either of them, but instead constitutes merely a tabulation of the votes cast at the various voting precincts and the totals of such votes. Neither the penciled report or minutes of the proceedings of the boards of canvassers made by the county superintendent of schools nor the typewritten copy, which he made and entered of record on the following day, was introduced or offered in evidence and the contents, of course, are not before this Court. The record discloses that no order declaring or certifying the results of the elections has been prepared or authorized by the members of either of the two boards of canvassers.
The evidence in behalf of the defendants shows that there has been no declaration of the result of either election and that since the meeting of the boards of canvassers was dissolved by the departure of their members from the courthouse on the evening of December 18, 1961, no further action in connection with the canvass of the votes of either election has been taken by either board of canvassers, except the action of the county court as a board of canvassers at its meeting on January 29, 1962, at which the request for a recount was granted and February 13, 1962, was designated as the date to conduct such recount.
The questions presented for decision are: (1) Whether taxpayers and voters have a statutory right to demand a recount of the votes cast at a special bond election and at a special school levy election; (2) whether demand for a recount of the votes cast at such special elections was made before the results of such elections had been declared; and (3) whether the county court as a board of canvassers is the proper governmental instrumentality to recount the ballots cast at both special elections.
Section 33, Article 5, Chapter 3, Code, 1931, as amended, to the extent here pertinent, provides that "The Commissioners of the county court shall be ex officio a board of canvassers, and, as such, shall keep in a well-bound book, marked `election record', a complete record of all their proceedings in ascertaining and declaring the result of every election in their respective counties. * * * After canvassing the returns of the election, the board shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots, and recount the same; * * *." Though it is true that the statute specifies only a candidate voted for at such election in connection with a demand for a recount, it necessarily applies to voters and taxpayers who are interested in an election at which no candidate for public office was voted for. Unless the statute is given such meaning and effect taxpayers and voters, who are directly interested in the result of an election such as a special bond election or a special school levy election, could not challenge or investigate the validity of any such election.
This Court has so applied the quoted provisions of the statute. Park v. Landfried, 135 W.Va. 361, 63 S.E.2d 586. In that case the right of certain citizens and taxpayers to demand a recount by the commissioners of the county court of Jackson County as a board of canvassers of the ballots cast at a special school levy election held in that county was questioned and challenged. In upholding the right of a person not a candidate but whose interest is that of a taxpayer or a voter to demand a recount under Section 33, Article 5, Chapter 3, Code, 1931, as amended, this Court said "The high public interests involved in the immediate question prompt us to apply the reference provisions contained in Code, 11-8-17, and hold, as we do, * * *, that notwithstanding Code, 3-5-33, which expressly gives only to a candidate voted for the right to a recount, that the instant relators were entitled to the recount, which the board of canvassers made under the coercion of the *887 circuit court's writ of mandamus." The opinion in the same case also contains this language: "If we were to hold that in a school levy election, under Code, 11-8-16, 17, that Code, 3-5-33, precludes persons who are only taxpayers, residents, citizens and voters of a county from demanding a recount, there would be a serious question whether a contest would be available to such persons, and, as under the holding of this Court in Brazie v. [Fayette County] Commissioners, supra [25 W.Va. 213], a canvassing board has no power to go behind the returns to inquire as to fraud and illegality in an election not appearing on the face of the returns, fraud in an election would go unchallenged, and the result declared solely on the basis of the return, no matter how grossly tainted with fraud is the election."
Under Section 33, Article 5, Chapter 3, Code, 1931, as amended, taxpayers and voters of a county have the right to demand a recount of the ballots cast at a special bond election and a special school levy election held in the county; and effect should be given to the demand of the taxpayers and voters who seek a recount of the ballots cast at the special elections held in Wirt County on December 12, 1961.
The law is well settled that the demand for a recount under Section 33, Article 5, Chapter 3, Code, 1931, as amended, must be made before the result of an election is officially declared and that the result of an election is officially declared when all the votes cast have been tabulated and the board of canvassers, in regular session, directs the entry of an order certifying the result in accordance with the tabulations. State ex rel. Wilson v. The County Court of Barbour County, 145 W.Va. 435, 114 S.E. 2d 904; State ex rel. Staley v. The County Court of Wayne County, 137 W.Va. 431, 73 S.E.2d 827; Alderson v. The County Court of Summers County, 132 W.Va. 61, 50 S.E.2d 473; State ex rel. Fanning v. The County Court of Mercer County, 129 W.Va. 584, 41 S.E.2d 855; Beacom v. Board of Canvassers of Cabell County, 122 W.Va. 463, 10 S.E.2d 793; Duty v. Thompson, 79 W.Va. 415, 91 S.E. 11.
The evidence establishes beyond question that no declaration of the result of the elections has ever been made by either the board of canvassers of the special bond election or the board of canvassers of the special school levy election. Though there is testimony that the total number of votes cast at the special bond election as shown by the signed tally sheet for that election was 1400, of which 906 votes were cast for the bonds and 494 votes were cast against the bonds and that the bonds were approved by sixty five per cent of the votes cast, and some testimony to the effect that the results of the special school levy election were tabulated and entered upon a tally sheet of that election, which however was not produced or introduced in evidence, there is no evidence of any public declaration of the result of either election by either of the boards of canvassers or any of their members at any time. There is no record of any kind of the declaration of the result of either election by any order of the board of education as the board of canvassers of the special bond election or of the county court as the board of canvassers of the special school levy election. As there has been no declaration of the result of either election and as a timely demand for a recount has been made by taxpayers and voters, they are entitled to a recount of the ballots cast at each of the special elections.
The county court, as the board of canvassers of the county, is the duly authorized governmental instrumentality, under the provisions of Section 33, Article 5, Chapter 3, Code, 1931, as amended, to canvass the returns and recount the ballots cast at the special school levy election. Park v. Landfried, 135 W.Va. 361, 63 S.E. 2d 586. In that case this Court held in point 1 of the syllabus that "The votes in a special election, called by the board of education of a county, pursuant to Code, 11-8-16 and 17, should be canvassed by the *888 members of the county court of that county, acting as a board of canvassers; and upon a recount being demanded by a citizen, voter or taxpayer of the county, though he be not a candidate for office, the members of the county court, as a board of canvassers, should conduct such recount." As to a recount of the votes cast at the special bond election called by the Board of Education of Wirt County under the provisions of Article 1, Chapter 13, Code, 1931, as amended, Section 13 of that article provides that the authorities calling bond electoins shall canvass the returns at the same time with reference to the election and in the same manner as is required of county courts for general elections and Section 11 of the same article states that all the provisions of the general election laws of this State concerning general, primary or special elections, when not in conflict with the provisions of that article, shall apply to bond elections thereunder, in so far as practicable. It is significant that though Section 13, Article 1, Chapter 13, Code, 1931, provides that the authority calling bond elections shall canvass the returns, which in this instance was the board of education, that article and chapter contain no provision which specifically relates to or authorizes the board of education or any other governmental instrumentality to conduct a recount of the ballots cast at such special bond election. In the absence of any conflicting special statute, and under the provisions of Section 11, Article 1, Chapter 13, Code, 1931, that all of the provisions of the general election laws of this State concerning general, primary or special elections, when not in conflict with the provisions of that article, shall apply to bond elections thereunder, in so far as practicable, and the provisions of Section 33, Article 5, Chapter 3, Code, 1931, as amended, that "The Commissioners of the county court shall be ex officio a board of canvassers, and, as such, shall keep in a well-bound book, marked `election record', a complete record of all their proceedings in ascertaining and declaring the result of every election in their respective counties.", and that "After canvassing the returns of the election, the board shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots, and recount the same;" the County Court of Wirt County, as such board of canvassers, is vested with the power and authority to recount the ballots cast at the special bond election in the county and is the proper governmental instrumentality to conduct such recount. See Park v. Landfried, 135 W.Va. 361, 63 S.E.2d 586. (Emphasis supplied).
The County Court of Wirt County, as the board of canvassers of that county being vested with the power and authority to conduct a recount of the ballots cast at both special elections, is subject to the duty to conduct such recount promptly and without unnecessary delay and to comply with the public policy of this State which requires diligent and timely action by officers, boards, tribunals and courts in ascertaining, declaring and certifying the final results of an election. State ex rel. Staley v. The County Court of Wayne County, 137 W.Va. 431, 73 S.E.2d 827; State ex rel. Daugherty v. County Court of Lincoln County, 127 W. Va. 35, 31 S.E.2d 321; Nelson v. Nash, 126 W.Va. 568, 29 S.E.2d 253; Fleming v. Commissioners, 31 W.Va. 608, 8 S.E. 267.
For the foregoing reasons the writ sought by the petitioners in this proceeding was properly denied by the order entered by this Court on April 27, 1962.
Judge GIVEN participated in the unanimous decision of this proceeding and concurred in the order entered April 27, 1962, which denied the writ, but departed this life before this opinion was prepared and approved by the other members of this Court.
Writ denied.